UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| SONDRA L. AZAR | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:22-CV-142-ACL |
| | ) | |
| MARTIN O'MALLEY,[1] | ) | |
| Acting Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Sondra L. Azar brings this action under 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Act.

An Administrative Law Judge ("ALJ") found that, despite Azar's impairments, she was not disabled as she had the residual functional capacity ("RFC") to perform past relevant work as a dispensing optician and as a hand packager.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, under 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary. For the following reasons, the decision of the Commissioner will be affirmed.

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley shall be substituted for Kilolo Kijakazi as the defendant in this suit. *See* 42 U.S.C. § 405(g).

# I.    Procedural History

Azar filed her application for DIB on December 3, 2020. (Tr. 182–96). She claimed she is unable to work due to severe disc degeneration in her spine, impaired functioning on the right-side of her body, depression, high blood pressure, asthma, and rotator cuff injuries. (Tr. 277.)   She amended her alleged onset of disability date from June 15, 2020, to December 4, 2020.  (Tr. 12.) The ALJ denied Azar's claim and the Appeals Council denied her claim for review. (Tr. 94–103, 106–13.) Thus, the ALJ's decision stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Azar claims the RFC is not supported by substantial evidence. (Doc. 10 at 1.) She argues three points of error. First, she argues that the ALJ did not assess the RFC in a function-by-function manner regarding Azar's inability to stand for more than six hours at a time. *Id*. at 6. Second, she argues that the ALJ erred by finding that her mental impairments were non-severe. *Id*. at 10. Third and finally, she argues that the ALJ improperly discounted her subjective complaints about her symptoms. *Id*. at 13.

## The ALJ's Determination

The ALJ first found that Azar met the insured status requirements of the Social Security Act through March 31, 2025. (Tr. 15.)  Next, the ALJ found that Azar has not engaged in substantial gainful activity since December 4, 2020, the amended alleged onset date. *Id.* The ALJ concluded that Azar has the following severe impairments: degenerative changes to the cervical and thoracic spine, and obesity.  *Id.* He further found that Azar did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (Tr. 18.)

As to Azar's RFC, the ALJ stated:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following restrictions: the claimant is able to occasionally reach overhead with the bilateral upper extremities. She can occasionally climb ladders, ropes, or scaffolds, and can occasionally crawl.

(Tr. 19.)

The ALJ found that Azar was able to perform her past relevant work as a dispensing optician and as a hand packager further noting "[t]his work does not require the performance of work-related activities precluded by the claimant's residual functional capacity." (Tr. 22.)  He therefore concluded that Azar was not under a disability, as defined in the Social Security Act, from December 4, 2020, through the date of the decision.  (Tr. 23.)  The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability insurance benefits protectively filed on December 3, 2020, the claimant is not disabled as defined in sections 216(i) and 223(d) of the Social Security Act.
>
> Based on the application for supplemental security income protectively filed on December 3, 2020, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

(Tr. 24.)

## II.    Applicable Law

### II.A. Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial

evidence test," requires a more scrutinizing analysis than "than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Sec'y of Health & Hum. Servs.,* 957 F.2d 581, 585–86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence that fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). Even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). The reviewing court must affirm the administrative decision if it is supported by substantial evidence on the record as a whole, even if the record could have supported an opposite decision. *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992); *see also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003). Put another way, a court should "disturb the ALJ's

decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted).

II.B. Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted—or can be expected to last—for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any kind of substantial gainful work which exists. . . in significant numbers in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b); *see also Id.* § (b)(1)–(6) (enumerating the abilities and aptitudes of basic work activities); *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(iii), 416.920(d); *see also Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.  20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations." *Wright v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see also* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence that the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The

Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do given the claimant's RFC, age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358–59 n.5 (8th Cir. 2000). The Commissioner must prove both that the claimant's RFC will allow the claimant to make an adjustment to other work and that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a. The first step requires that the Commissioner "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists. *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). The Commissioner must then rate the degree of functional loss resulting from the impairments. *See* 20 C.F.R. §§

404.1520a(b)(3), 416.920a(b)(3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities. *See id.* Next, the Commissioner must determine the severity of the impairment based on those ratings. *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c). If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder. *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders. *See id.* If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

## III.    Discussion

As noted, Azar alleges that the RFC formulated by the ALJ was not supported by substantial evidence.  She claims that the ALJ erred in finding that her mental impairments were not severe.  More specifically, she argued that the ALJ did not properly evaluate the medical opinion evidence and prior administrative medical findings.  (Doc. 9 at 10-13.)  Azar also claims that the "ALJ failed to comply with SSR 16-3 p in that he rejected Azar's subjective complaints solely based on the objective medical evidence." *Id*. at 13-15.  Finally, Azar argues that "the ALJ failed to provide an RFC in a function-by-function manner or explain how the record supported finding that Azar had no limitation in her ability to stand or walk." *Id*. at 6-10.  The undersigned will discuss Azar's claims in turn, beginning with the ALJ's evaluation of the opinion evidence.

### A.  Evaluation of Opinion Evidence

Azar first argues that the ALJ's conclusion that her depression and panic disorders as

non-severe is not supported by substantial evidence.  She claims that although the ALJ

considered the supportability factor when evaluating the State agency opinions of Dr. Mark

Altomari and Dr. Steven Akeson, the ALJ did not articulate the consistency factor. (Doc. 10 at

11.)  Azar raises the same claim of error for the ALJ's conclusion that Dr. Brandt's opinion was

unpersuasive.  *Id*. at 11-12.  She further argues that the ALJ's reliance on her normal mental

status examinations, including "intact" memory and findings of "good attention span and

concentration" bore "no relation to [her] ability to sustain such activities over time."  *Id*. at 12.

Under the revised Social Security regulations,[2] the agency "[w]ill not defer or give any

specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior

administrative medical finding(s), including those from [the claimant's] medical sources."  20

C.F.R. §§ 404.1520c(a), 416.920c(b)(2).  Instead, the ALJ must assess the persuasiveness of all

medical opinions and prior administrative medical findings[3] using a number of factors, including

1) the supportability of the opinion with objective medical evidence and explanations; 2) the

consistency of the opinion with evidence from other medical and nonmedical sources; 3) the

relationship of the provider to the claimant, including the length, nature and frequency of

treatment; 4) the specialization of the provider; and 5) other factors, including the source's

familiarity with the Social Security guidelines.  *See* 20 C.F.R. § 404.1520c.

In evaluating the persuasiveness of a medical opinion, the factors of supportability and

consistency are the most important for an ALJ to consider, and the ALJ must "explain how he

---

[2]The new regulations are applicable to Foust's claims because she filed her appeal after March 27, 2017.  *See* 20 C.F.R. §§ 404.1520c, 416.920c.

[3]"Prior administrative medical findings" are findings, other than the ultimate determination on whether a claimant is disabled, about medical issues made by the consultants at a prior level of review in the claimant's current claim based on their review of the evidence.  81 Fed. Reg. at 62,564; 20 C.F.R. § 404.1513(a)(5) (2017).

considered the supportability and consistency factors ... in [the] determination or decision." 20 C.F.R. § 404.1520c(b)(2).  An ALJ's failure to address either the consistency or supportability factor in assessing the persuasiveness of a medical opinion requires reversal. *Bonnett v. Kijakazi*, 859 Fed. Appx. 19, 20 (8th Cir. 2021) (unpublished) (per curium) (citing *Lucus v. Saul*, 960 F.3d 1066, 1069-70 (8th Cir. 2020) (remanding where ALJ discredited physician's opinion without discussing factors contemplated in Regulation, as failure to comply with opinion-evaluation Regulation was legal error)).  ALJs need not explain in their decision how they considered the other factors.  20 C.F.R. § 404.1520c(b)(2).

### A.1. Mental Impairments are not Severe

On March 17, 2021, Dr. Altomari summarized Azar's psychiatric records.  (Tr. 64.)  He noted that Azar was prescribed Sertraline for depression and that all mental status examinations were normal, more specifically, Azar was alert and cooperative with normal mood and affect.  In September of 2020, Azar sought emergent medical care for chest pain.  She was cleared cardio-vascularly and diagnosed with a panic attack.  Azar was seen by a psychiatrist, and she mentioned suicidal ideation without a plan.  Azar reported that she had these thoughts off and on for roughly 35 years, since she was 19.  Azar noted that she never acted on such thoughts "Because God put [her] here for a purpose."  (Tr. 64.)  It was noted that Azar "is very religious and actual suicide is simply out of the question." *Id*.  As to mental status examinations, the following summary was provided:

> [Azar] is very friendly and forthcoming.  She seems quite down-to-earth.  Not a hint of sadness or depression.  Affect is wholly appropriate.  Thought processes are integrated and free of any racing, blocking or looseness of association.  She has not psychotic symptoms, such as command hallucinations telling her to harm herself, delusions, ideas of reference etc.  Speech is of normal rate and volume, without dysarthria, prosody or pressure.  Cognitive functions are intact and insight and judgment likewise.  She flatly denies any formal suicidal or homicidal intent

or plan.

*Id*.  As to activities of daily living, the record reflects that Azar reported:

> Difficulty concentrating and she sometimes forgets what she is doing.  She can only pay attention 10 minutes, doesn't finish what she starts, needs help following a recipe, and she cannot handle stress.  However, she is able to cook for 1 hour, go out alone, drive, shop, pay bills, use a checkbook, read, watch movies for 3 hours, socialize, and she completed her forms in great detail.

*Id*.  Dr. Altomari concluded that Azar had only mild limitation in concentration, persistence, and maintaining pace, and no limitation in the other functional areas.  (Tr. 64, 71.)

At the reconsideration level, Dr. Akeson considered a mental examination (Tr. 81, 89, 896-900) that was conducted by John Randall Brandt, Ph.D., Licensed Clinical Psychologist, on May 20, 2021.  Dr. Brandt noted that Azar arrived on time, and she was wearing clean, casual clothing.  She made appropriate eye contact; was alert and oriented times three; and was amiable and well-mannered.  Azar was euthymic and her affect was appropriate to content although it was noted she teared up a couple of times.  She was not overtly anxious and was easily engaged.  Her speech was normal.  Azar scored 25/30 on the Montreal Cognitive Assessment (MoCA)[4], which was just outside of the *normal* range.  (Tr. 899.)  Azar was diagnosed with persistent depressive disorder with Somatic Symptom Disorder, primarily pain, and intermittent major depressive episodes, not currently.  *See* Tr. 81, 89; 899.

Additional notes concerning Azar's activities of daily living at the reconsideration level included that she noted trouble with memory and completing tasks.  (Tr. 81, 89.)  She self-reported not handling stress well.  *Id*.  Dr. Akeson observed that these statements were seen as

---

[4] Severity levels for MOCa are assessed as follows: 18-25 = ***mild*** cognitive impairment, 10-17= moderate cognitive impairment and less than 10= severe cognitive impairment. However, research for these severity ranges has not been established yet.  *See* https://mocacognition.com/faq/ (emphasis added), last visited on March 26, 2024.

"partially consistent" in that Azar takes care of pets, has no trouble with personal care, prepares simple meals, does dishes and mow the lawn, drives, goes out alone, and shops. *Id*. Furthermore, Dr. Akeson noted that Azar reported no trouble with money, can read, and watches movies. *Id*. It was noted that Azar prefers written instructions over spoken instructions so that she can refer to them; and that Azar was not seeking treatment with a counselor. There was no recent emergent/inpatient treatment for mental impairment. *Id*. After considering the additional information, Dr. Akeson concluded that Azar had only mild limitation in concentration, persistence, and maintaining pace, and no limitation in the other functional areas. (Tr. 80, 88.)

The ALJ analyzed the broad functional areas of mental functioning set out in 20 C.F.R., Part 404, Subpart P, Appendix 1, known as the "paragraph B" criteria. The ALJ recited that Azar alleges limitations in the first functional area as to her memory although the ALJ found no limitation in this area. In making this conclusion, he relied on the normal examination findings by Dr. Kindall on July 17, 2021 (Tr. 907[5]), a Clinical Assessment by Dr. Jodi Dancer at Ozarks Healthcare on November 15, 2021 (Tr. 942[6]), and a Psychiatric Evaluation by Dr. Christine Carrejo of OZH Behavioral Health on March 31, 2022 (Tr. 972[7]).

In the next functional area of interacting with others, the ALJ stated that Azar reports a good ability to get along with authority and found no limitations. Azar does not challenge this finding.

---

[5] Dr. Kindall noted Azar's "memory was normal and concentration good." (Tr. 907.)
[6] Dr. Dancer's mental status examination assessed Azar's cognitive functioning as follows, "good concentration, memory intact and oriented," and her attention/concentration was noted as "good (on-task 90%)." (Tr. 942.)
[7] Dr. Carrejo noted that Azar's memory was "intact for recent and remote events." (Tr. 972.) Dr. Carrejo observed that Azar was cooperative, related well to the examiner, her thought process was "linear, logical, and goal directed," and her insight and judgment were "deemed to be good given the recognition of problems and desire for treatment." *Id*.

As to the third functional area—concentrating, persisting, or maintaining pace—the ALJ noted Azar alleges problems with concentration and completing tasks.  The ALJ observed that "[t]he claimant's mental impairments, in combination with pain from her physical conditions, may result in some distractibility."  (Tr. 17.)  Thus, he found the evidence supported mild limitation in concentrating, persisting, or maintaining pace.  He noted that Azar "has been observed to have good attention span and concentration."  *Id*.  This is supported by the findings of Drs. Kindall, Dancer, and Carrejo in footnotes five through six herein.

Finally, the ALJ found no limitation in the fourth functional area of adapting and managing oneself.  He noted that Azar had only two hospitalizations due to situational stressors in her life, but no episodes of significant psychological decompensation or inpatient psychiatric treatment during the period of adjudication.  The ALJ added that Azar "is the primary caregiver for her disabled husband and reports a generally good ability to manage her day-to-day affairs."  *Id*.

Dr. Brandt examined Azar on May 20, 2021, and concluded that she should be limited to simple work.  He concluded that Azar is "able to understand, remember, and carry out simple instructions.  She is vulnerable to forgetting, perhaps due to the pain and/or gabapentin.  She might need to establish systems of control to make sure she has not forgotten important tasks." (Tr. 899.)  Dr. Brandt noted that except during acute exacerbations of pain, Azar is able to concentrate, persist, and keep pace.  He further indicated she has the ability to interact effectively in work situations as she is a "nice, long-suffering person."  *Id*.  Dr. Brandt further opined that Azar "appears to have intact capacity to adapt to changes in simple work situations."  *Id*.  It appears that Dr. Brandt's determination that Azar should be limited to simple work was based on her MoCA score of 25, which is just outside the range of normal.  It is worth noting that although

Dr. Akeson was aware of Azar's MoCA score of 25, he concluded that Azar was only mildly limited in concentration, persistence, and maintaining pace. *See* Tr. 80-81, 88-89.

In his opinion, the ALJ concluded, in relevant part:

> State agency psychological consultants Mark Altomari, Ph.D., and Steven Akeson, Psy.D., both concluded that the claimant's mental impairments are non-severe. These prior administrative medical findings are persuasive, as they are well-supported by the claimant's treatment records and mental status findings.
>
> The opinion of consulting psychologist John Brandt, Ph.D., is not persuasive. Dr. Brandt's opinion that the claimant is limited to simple work is not consistent with the mental status examinations performed by her treatment providers, who have found intact memory, attention span, and concentration with no significant cognitive deficits.

(Tr. 22, citations omitted.)

Dr. Altomari completed the Disability Determination Explanations (DDEs) for DS and DIB at the initial level on March 23, 2021. (Tr. 62-65 and Tr. 69-72, respectively.) He concluded that Azar had a single mental limitation in the third functional area and rated it "mild." (Tr. 64, 71.) The DDEs further noted that the total evidence supports a non-severe medically determinable impairment, *id.*, and that no mental residual functional capacity adjustments were associated with the claim. (Tr. 67, 74.) The DDEs further provide that "[t]here is no indication that there is a medical opinion from any medical source." (Tr. 65, 72.)

Dr. Akeson completed the DDEs for DS and DIB at the reconsideration level on August 2, 2021. (Tr. 78-81 and Tr. 86-89, respectively.) Dr. Akeson also concluded that Azar had a single mental limitation in the third functional area and rated it "mild." (Tr. 80-81, 88-89.) The reconsideration DDEs further note that the total evidence supports a non-severe medically determinable impairment (Tr. 81, 89), and that no mental residual functional capacity adjustments were associated with the claim (Tr. 83, 91).

In sum, the ALJ's determination at step 3 that Azar's mental impairments are non-severe is supported by substantial evidence.

## A.2. Physical Impairments

Azar complains that the ALJ focused on the objective medical evidence rather than her subjective reports, which "blinded him [from] the consistency" of Azar's claims related to her activities of daily living, along with her treatment for neck pain including consultation with Dr. Armene, prescription for Gabapentin and referral to physical therapy, followed by two cervical epidural steroid injections based on Azar's reported pain level of 7 out of 10.  *See* Doc. 10 at 14-15.

As to Azar's physical impairments, the ALJ concluded that there is no evidence her hypertension nor hyperlipidemia, dysphagia or gastropathy, diabetes, or asthma result in any limitations in Azar's work-related functional abilities.  (Tr. 15-16.)  Azar does not challenge these findings.

The ALJ also found that "[i]n the absence of any objective evidence of shoulder pathology, [he is] unable to find that the claimant has a medically determinable shoulder impairment."  (Tr. 18.)  He observed that there is no imaging of Azar's shoulder, plus physical examination found no abnormalities.  On July 17, 2021, Dr. Martin found that Azar has full range of motion in both shoulders.  (Tr. 910.)

The ALJ observed that Azar has a longstanding history of cervical disc disease dating back to a C5-6 fusion surgery in 1994.  (Tr. 21.)  On August 27, 2020, Azar saw Dr. Chiazo S. Amene, and complained she had been experiencing right arm numbness for four months.  (Tr. 349.)  She described the pain as running from her ear to her fingertips.  She rated the pain as a 7 out of 10.  *Id*.  On physical examination, Dr. Amene observed that Azar was a healthy appearing

female.  As to musculoskeletal findings, Dr. Amene noted that Azar had palpable pain over the cervical spine vertebra, 5/5 muscle strength in the bilateral deltoids, biceps, triceps, wrist extensors, hand intrinsics, iliopsoas, quadriceps, tibialis anterior, gastrocnemius and extensor hallicus longus without exception; muscle tone in both the upper and lower extremities was within normal limits; normal gait; and negative straight leg raise negative on the bilateral.  Dr. Amene's neurological findings included that Azar was alert, oriented to time, place, and person; cranial nerves are grossly intact; normal sensation to light touch and pinprick throughout the bilateral upper and lower extremities in all dermatomal distributions without exception; deep tendon reflexes are 1-2/4 and equal throughout the bilateral upper and lower extremities; and great toes are downgoing bilateral without clonus.  Dr. Amene concluded that Azar suffers from degenerative disc disease with right upper extremity numbness and diagnosed her with previous acquired fusion at C5-6, spinal stenosis with mild cord compression at C3-4 and C4-5, further observing that mild cord edematous changes appear to be present; and bilateral foraminal stenoses at C4-5.  (Tr. 352-353.)  Based on the "complexity" of Azar's problems, Dr. Armene recommended a trial of conservative management, addition of Gabapentin and NSAIDs, as well as referral to physical therapy.  (Tr. 353.)

On July 17, 2021, Azar was examined by State agency consultant Kindall Martin, D.O.  (Tr. 905-912.)  Azar reported a history of asthma since she was an infant and noted that exertion contributes to her breathing problems.  (Tr. 905.)  Azar indicated that she was diagnosed with high blood pressure and cholesterol in 2016, and that she has been using medication for the condition since 2017.  *Id*. Azar claimed that she suffered headaches twice monthly and blurry vision although no hospitalizations; and that those symptoms negatively impacted her ability to work.  *Id*.  Azar added that she suffered from depression since childhood and was diagnosed with

depression in 2018, secondary to situational stressors related to money issues, marital issues, and life. *Id*. At the time of the exam, Azar had been unemployed from her job as a cashier since November of 2020.  (Tr. 906.) She was married with three children.  Her daily activities consisted of watching TV, reading, caring for her dogs, and eating. *Id*.  Azar reported her functional limitations due to her back and knee pain as sitting 15 minutes, standing 30 minutes, walking 2 blocks, and lifting and carrying 5 pounds repetitively and 15 pounds occasionally. (Tr. 906.)

The ALJ found that Azar had recurrent neck pain and right arm numbness and exhibited decreased cervical range of motion and tenderness to palpation.  (Tr. 21, citing 349, 352, 908.) On August 14, 2020, she underwent an MRI of her cervical spine.  The ALJ noted that the results showed spinal stenosis with mild cord compression at [C3-4] and C4-5, as well as bilateral neuroforaminal stenoses at C4-5.  (Tr. 21.)  The MRI results also showed that Azar was diagnosed with "[r]adiculopathy, unspecified spinal region; *[c]ervical radiculopathy*; parathesia of right arm; and [c]ervical vertebral fusion."  (Tr. 462-463, emphasis added.)  In concluding that electrodiagnostic testing has found no evidence of *cervical radiculopathy*, the ALJ cited a later, normal EMG and NCV study from December 16, 2020, showing "no electrodiagnostic evidence of neuropathy, plexopathy or radiculopathy in *right arms*."  (Tr. 21, citing Tr. 356; emphasis added.)  He also cited Dr. Armene's August 27, 2020, findings and Dr. Tindall's July 17, 2021, findings that Azar had normal strength in both upper extremities, preserved manual dexterity in both hands, and did not exhibit any sensory deficits in her upper extremities. (Tr. 356, 907-908, 910.)  Although the ALJ failed to acknowledge the presence of cervical radiculopathy, the error is harmless as he considered Azar's neck pain in formulating the RFC.

The ALJ also found that Azar's thoracic spine shows mild to moderate disc degeneration, decreased range of motion in her back, as well as mild difficulty squatting and arising from a seated position.  (Tr. 21.)  On the other hand, he noted positive findings including that Azar walks with a normal gait and station, without the need for an assistive device; she can walk on her heels and toes with ease and performs tandem walking normally; she is able to hop on one foot bilaterally; she exhibits no sensory, motor, or reflex deficits in her lower extremities; and bilateral straight leg testing was negative.  *Id*.

Furthermore, the ALJ considered the fact that Azar exhibited tenderness in her left knee to palpation and decreased range of motion in the joint, and concluded that could be "due to, or at least exacerbated by, her weight."  *Id*.  He stated, "[t]he effects of the claimant's obesity have been considered in determining her residual functional capacity."  *Id*.

The ALJ then found that in considering the entire record, "despite her impairments, [Azar] retains the ability to perform light exertional work" consistent with his RFC assessment. (Tr. 22.)  He added that the light exertional work finding was based, in part, on his conclusion that State agency consultants, Drs. Jane Murray and Judee Bland, were generally persuasive. Adding that he "adopted additional postural and manipulative limitations to ensure that" Azar's "neck, back, right arm, and left knee pain are fully accommodated."  *Id*.

The undersigned finds that the ALJ properly evaluated the opinion evidence as to Azar's physical impairments.  Although Azar argues otherwise, she does not identify any medical opinions that are contrary to the ALJ's findings.  The ALJ explained how he addressed the supportability and consistency factors regarding the State Agency consultants and treatment provider opinions, as discussed above.  The ALJ pointed to specific evidence demonstrating that

the record did not support the presence of more than mild limitations in concentration, or that

Azar had memory problems.

The ALJ found that Drs. Murray and Bland's findings as to Azar's physical impairments

were "generally persuasive."  (Tr. 22.)  Because the ALJ found greater limitations resulting from

Azar's physical impairments than those found by Drs. Murray and Bland's, any error resulting

from the ALJ's evaluation of these opinions was harmless.

**B.    Subjective Complaints**

Azar argues that the ALJ failed to properly evaluate her subjective reports related to her

neck and arm pain, that she was limited to lifting five pounds along with her treatment for neck

and arm pain; and he failed to consider her activities of daily living.

As an initial matter, Social Security Ruling 16-3p[8] eliminated the word "credibility" from

the analysis of subjective complaints, replacing it with "consistency" of a claimant's allegations

with other evidence.  SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529.

The Rule incorporates the familiar factors from *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.

1984) that previously guided an ALJ's analysis of subjective complaints, including: objective

medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's

daily activities; (2) the duration, frequency and intensity of the symptoms (*i.e.*, pain); (3)

precipitating and aggravating factors; (4) the dosage, effectiveness and side effects of

medication; and (5) any functional restrictions.  *See Schwandt v. Berryhill*, 926 F.3d 1004, 1012

(8th Cir. 2019).  If the evidence as a whole "undermines" or "cast[s] doubt on" a claimant's

testimony, an ALJ may decline to credit a claimant's subjective complaints.  *Id.*

---

[8]The revised Ruling became effective on March 27, 2017.  It applies to determinations or
decisions made by the Social Security Administration on or after March 28, 2016.

The ALJ is not mechanically obligated to discuss each of the above factors, however, when rejecting a claimant's subjective complaints, the ALJ must make an express determination detailing his or her reasons for discrediting the testimony, and the ALJ's assessment must be based on substantial evidence. *Vick v. Saul*, No. 1:19 CV 232 CDP, 2021 WL 663105, at *8 (E.D. Mo. Feb. 19, 2021) (citing *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012); *Grba-Craghead v. Astrue*, 669 F. Supp. 2d 991, 1008 (E.D. Mo. 2009)).  On review by the court, "[c]redibility determinations are the province of the ALJ." *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090 (8th Cir. 2018) (quoting *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016)).  The court defers to the ALJ's determinations "as long as good reasons and substantial evidence support the ALJ's evaluation of credibility." *Id.*

The ALJ summarized Azar's testimony regarding her limitations as follows, in relevant part:

> The claimant alleges that she is disabled due to physical and mental impairments. She testified that she suffers from chronic neck and left knee pain that limits her abilities to stand and walk.  She stated she can only stand for about 15 minutes at a time and is unable to walk more than 2 blocks due to pain.  She testified that she cannot lfit more than about 5 pounds.  The claimant reported that she has pain and a tingling sensation that radiates down her right arm.  She stated that this makes it difficult to use her right hand and indicated that she is prone to dropping things. Regarding her mental impairments, the claimant testified that she struggles with depression and passive suicidal ideation.  She indicated that she also experiences panic attacks.  The claimant testified that she has memory problems and tends to forget things unless she writes them down.

(Tr. 20.)

The ALJ determined that, although Azar's medically determinable impairments could reasonably be expected to cause the alleged symptoms, her statements regarding the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical

evidence and other evidence in the record. *Id.* The Court finds that the ALJ appropriately considered Azar's subjective allegations.

## C.  RFC and Ability to Perform Past Relevant Work

A claimant's RFC is the most she can do despite her physical or mental limitations. *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). It is the ALJ's responsibility to determine a claimant's RFC by evaluating all medical and non-medical evidence of record. 20 C.F.R. §§ 404.1545, 404.1546, 416.945, 416.946. Some medical evidence must support the ALJ's RFC finding, but there is no requirement that the evidence take the form of a specific medical opinion from a claimant's physician. *Myers v. Colvin*, 721 F.3d 521, 526-27 (8th Cir. 2013); *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012); *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011). "The determination of a claimant's RFC during an administrative hearing is the ALJ's sole responsibility and is distinct from a medical source's opinion." *Wallenbrock v. Saul*, No. 4:20-CV-00182-SRC, 2021 WL 1143908, at *6 (E.D. Mo. Mar. 25, 2021) (citing *Kamann v. Colvin*, 721 F.3d 945, 950-51 (8th Cir. 2013)).

The record supports the ALJ's finding that Azar's physical conditions warrant some restrictions. (Tr. 21-22.) He discussed the medical evidence regarding Azar's physical impairments and concluded that despite her impairments, she retains the ability to perform light exertional work that is consistent with his RFC that limited her to occasional reaching overhead with the bilateral extremities and occasional climbing of ladders, ropes, or scaffolds, and can occasionally crawl. (Tr. 19.) The ALJ did not err in making this finding.

As argued by the Commissioner, Azar's claim that the ALJ did not assess her RFC on a function-by-function basis and specifically discuss her ability to stand and walk, is meritless. (Doc. 11 at 10.) Azar's argument that the ALJ did not properly consider her limitations in

standing and walking has been rejected by not only the Eighth Circuit, but by this Court and other district courts which have repeatedly heard variations of the same argument.  *See Ellis v. Kijakazi*, No. 1:21-CV-94-SNLJ, 2022 WL 4464806, at *6 (E.D. Mo. Sept. 26, 2022) (citing *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090-91) (The ALJ's "failure to mechanically list and reject every possible limitation is not error."); *see also Menter v. Kijakazi*, No. 620CV003198DGKSSA, 2022 WL 188146, at *2 (W.D. Mo. Jan. 20, 2022) (collecting Eighth Circuit and district court cases rejecting this argument).  In finding Plaintiff could perform light work with additional postural limitations, the ALJ clearly found Azar could perform the standing and walking definitionally required by "light work" as that term is defined in agency regulations. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b); Security Ruling (SSR) 83-10 ("[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.").

While the Vocational Expert's (VE's) testimony during the administrative hearing became "a little bit muddled," as noted by the ALJ (Tr. 56), the ALJ was aware that Azar could not perform her past relevant work as actually performed.  The ALJ found that Azar is capable of performing past relevant work as a Dispensing Optician and as a Hand Packager, however, further noted "[t]his work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965)."  (Tr. 22.)  As discussed above light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday; and the ALJ included physical limitations in the RFC.

It is the ALJ's role to evaluate the record in its entirety, including medical opinions and testimony, and formulate a claimant's RFC based on all the relevant, credible evidence of record. *See Perks*, 687 F.3d at 1092.  This is precisely what the ALJ did in this case.  The ALJ's mental

and physical RFC determinations are supported by substantial evidence on the record as a whole. In his discretion, the ALJ made an RFC finding that did not precisely reflect any of the medical opinions of record.  *See Martise*, 641 F.3d at 927 (ALJ is not required to rely entirely on one particular physician's opinion or choose between opinions).  The RFC is consistent with or more restrictive than all of the medical opinion evidence and prior administrative findings.  Thus, Azar has failed to demonstrate that the ALJ's decision was outside the available "zone of choice."

Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

Dated this 27th day March, 2024.

s/*Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE